UNITED STATES, Appellee,

v.

Milton D. STEELE, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 99–0314.
Crim.App. No. 97–1236.

U.S. Court of Appeals for
the Armed Forces.

Argued April 4, 2000.

Decided Aug. 16, 2000.

EFFRON, J., delivered the opinion of the Court, in which CRAWFORD, C.J., SULLIVAN and GIERKE, JJ., and COX, S.J., joined. COX, S.J., filed a concurring opinion.

For Appellant: *George A. Gallenthin* (argued); *Lieutenant Dale O. Harris* (on brief).

For Appellee: *Captain William J. Collins, Jr.* (argued); *Commander Eugene E. Irvin, Colonel Kevin M. Sandkuhler* and *Captain Michael D. Carsten* (on brief).

Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted appellant, pursuant to mixed pleas, of conspiracy to distribute cocaine and wrongful distribution of cocaine, in violation of Articles 81 and 112a, Uniform Code of Military Justice, 10 USC §§ 881 and 912a, respectively. He was sentenced to a dishonorable discharge, confinement for 8 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence, and the Court of Criminal Appeals affirmed in an unpublished opinion.

On appellant's petition, we granted review of the following issue:

WHETHER APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHERE HIS CIVILIAN DEFENSE COUNSEL WAS UNAUTHORIZED TO PRACTICE LAW IN ALL JURISDICTIONS WHERE HE HAD BEEN ADMITTED TO PRACTICE LAW.

We also specified the following issue:

WHETHER A CIVILIAN COUNSEL WHO IS IN INACTIVE OR RETIRED STATUS IN HIS BAR MEMBERSHIP(S) REMAINS AUTHORIZED TO PRACTICE BEFORE A GENERAL COURT–MARTIAL IN TERMS OF UCMJ, ARTICLES 27 AND 38(b)(2) AND RCM 502.

For the reasons set forth below, we affirm the decision of the Court of Criminal Appeals.

## I. BACKGROUND

Appellant was represented at trial by detailed military counsel, Captain T, and by a civilian defense counsel, Mr. C. Detailed defense counsel announced that he was "qualified and certified in accordance with Article 27(b) and sworn in accordance with Article 42(a) of the Uniform Code of Military Justice." Similarly, civilian defense counsel announced, "I am licensed to practice law by the highest courts of the States of Iowa, Hawaii, and Texas; and I am previously qualified and certified and sworn in accordance with Articles 27(b) and 42(a) of the Uniform Code of Military Justice." The military judge then advised appellant of his rights to counsel, and appellant stated that he wished to be represented by Captain T and Mr. C.

Throughout trial and post-trial proceedings, and before the Court of Criminal Appeals, appellant made no claim challenging the qualifications, bar status, or effectiveness of either his detailed or civilian counsel. However, in his Supplement to Petition for Grant of Review filed in this Court, appellant asserted the foregoing Issue and moved to attach documents relating to Mr. C's professional status as a member of the Iowa, Hawaii, and Texas bar associations. We

granted appellant's motion to attach those documents on March 2, 2000. Because the facts in those documents are not contested, we accept them as true for purposes of this appeal.

These documents reveal that Mr. C was a member of the bar in three states, Iowa, Hawaii, and Texas, as he had stated on the record. He was admitted to the bar of Iowa in 1982, but his status was later changed to "retired and inactive." According to a letter from the Board of Professional Ethics and Conduct of the Iowa Supreme Court, "[a] person who has been admitted to practice law in Iowa and has had their license to practice law suspended or is on inactive status, cannot practice law under the authority of the Iowa license outside of Iowa." Mr. C was admitted to bar membership in Hawaii in 1989, but he later entered inactive status. According to Hawaii Supreme Court Rule 17(d)(7), an attorney may "desire to assume inactive status and discontinue the practice of law in Hawaii." The rule notes that an attorney on inactive status "shall no longer be eligible to practice law." Mr. C became a member of the bar of the State of Texas in 1992. Shortly thereafter, at his request, he was placed on inactive status. The result of that action was that civilian counsel was "not authorized to practice as an attorney and counselor at law in the STATE of TEXAS."

## II. QUALIFICATIONS OF COUNSEL

Article 27, UCMJ, 10 USC § 827, entitles an accused before a general or special court-martial to representation by detailed military defense counsel without regard to his ability to pay. Under Article 27(b):

(b) Trial counsel or defense counsel detailed for a general court-martial—

(1) must be a judge advocate who is a graduate of an accredited law school or is a member of the bar of a Federal court or of the highest court of a State; or must be a member of the bar of a Federal court or of the highest court of a State; and

(2) must be certified as competent to perform such duties by the Judge

Advocate General of the armed force of which he is a member.

Article 27 is silent with respect to the right to be represented by civilian counsel and with respect to any qualifications imposed upon civilian defense counsel.

Article 38(b), UCMJ, 10 USC § 838(b), sets forth the full penumbra of an accused's options with respect to representation before general and special courts-martial: detailed military counsel, individually requested military counsel, or civilian counsel. Under Article 38(b)(2), "The accused may be represented by civilian counsel if provided by him." Neither Article 38 nor any other provision of the Code establishes any qualifications or requisites—other than the oath—for a civilian counsel to practice before a court-martial. *See* Art. 42, UCMJ, 10 USC § 842; *see also Soriano v. Hosken*, 9 MJ 221 (CMA 1980), and *United States v. Kraskouskas*, 9 USC-MA 607, 26 CMR 387, 1958 WL 3387 (1958).

The President has established basic qualifications for civilian counsel in RCM 502, Manual for Courts–Martial, United States (1995 ed.). Civilian counsel representing an accused before a court-martial must be "[a] member of the bar of a Federal court or of the bar of the highest court of a State." RCM 502(d)(3)(A). If that civilian lawyer is "not a member of such a bar," then he or she must be "a lawyer who is authorized by a recognized licensing authority to practice law and is found by the military judge to be qualified to represent the accused upon a showing to the satisfaction of the military judge that the counsel has appropriate training and familiarity with the general principles of criminal law which apply in a court-martial." RCM 502(d)(3)(B). Neither the Code nor the Manual expressly disqualifies a civilian attorney on the grounds that his or her bar status is designated as "inactive."

Federal courts in the civilian sector have dealt with the question of an attorney's bar status vis-a-vis an accused's Sixth Amendment right to counsel. In general, they hold that once an attorney is found competent and admitted to practice law in a licensing jurisdiction, subsequent changes to his or her bar membership status do not render that counsel incompetent or disqualified. "Though ad-mission to practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court. Though that state action is entitled to respect, it is not conclusively binding on the federal courts." *In re Ruffalo*, 390 U.S. 544, 547, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), citing *Theard v. United States*, 354 U.S. 278, 281–82, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957).

In *Reese v. Peters*, 926 F.2d 668 (1991), Reese contended that representation at trial by a lawyer who had been suspended for failure to pay his state bar dues was an automatic violation of the Sixth Amendment. The Seventh Circuit rejected such a *per se* rule. The court agreed with *Beto v. Barfield*, 391 F.2d 275 (5th Cir.1968), which held "that a lawyer whose license had been suspended for failure to pay dues still may" serve as "counsel" within the meaning of the Sixth Amendment. "What matters for constitutional purposes is that the legal representative was enrolled after the court concluded that he was fit to render legal assistance." *Reese*, 926 F.2d at 670.

In *Solina v. United States*, 709 F.2d 160 (1983), the accused was unaware that his defense attorney had not passed the bar exam and had not been admitted to practice as a member of any state bar. While the Second Circuit did find this defect to be fatal in terms of the Sixth Amendment right to counsel, the court was careful to distinguish its holding from situations in which competence was not in issue:

[W]e do not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment. We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character. . . .

*Id.* at 167 (footnote omitted).

An argument that disbarment by the Court of Appeals made "counsel's continued

services ... ineffective under the Sixth Amendment" was rejected in *United States v. Mouzin*, 785 F.2d 682 (9th Cir.), *cert. denied sub nom., Carvajal v. United States*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986). The court held that subsequent services by that disbarred attorney would not be deemed inadequate without considering the "intrinsic quality" of those services. The court noted that in *United States v. Hoffman*, 733 F.2d 596 (9th Cir.), *cert. denied*, 469 U.S. 1039, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984), it had rejected any *"per se* rule" to the effect "that in the federal court, representation by a lawyer suspended from practice by a state bar automatically results in the denial of the Sixth Amendment right to counsel." It noted: "[T]he fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment. Rather, a defendant must ordinarily point to specific conduct which prejudiced him in order to raise the constitutional claim" of ineffective assistance of counsel. *Mouzin*, 785 F.2d at 696–97; *see also United States v. Maria–Martinez*, 143 F.3d 914, 916–19 (5th Cir.1998), *cert. denied*, 525 U.S. 1107, 119 S.Ct. 876, 142 L.Ed.2d 776 (1999); and *United States v. McKinney*, 53 F.3d 664, 675 (5th Cir.), *cert. denied sub nom., Wade v. United States*, 516 U.S. 901, 116 S.Ct. 261, 133 L.Ed.2d 184 (1995).

Our Court has addressed the significance of a licensing authority's decision to admit a person to the bar. In *Soriano v. Hosken, supra*, we noted that a civilian counsel must be "qualified" in order to make the right to civilian counsel "meaningful as intended by the Code." 9 MJ at 221. Civilian counsel must also be "authorized by some recognized licensing authority to engage in the practice of law." *Kraskouskas*, 9 USCMA at 609, 26 CMR at 389. There are no other restrictions on an accused's right to counsel under Article 38(b). Once licensed, "such lawyers are presumed competent for the professional undertaking of the defense of a military accused at a court-martial." *Soriano*, 9 MJ at 222.

The decisions of our Court and other federal courts reflect that admission to practice is the necessary indicia that a level of compe-tence has been achieved and reviewed by a competent licensing authority. This determination of competence is not necessarily eviscerated when sanctions are imposed by a state bar or by changes in counsel's status where those matters do not demonstrate a negative determination of counsel's competence. As the Ninth Circuit concluded in *Mouzin*:

> Neither suspension nor disbarment invites a per se rule that continued representation in an ongoing trial is constitutionally ineffective. Admission to the bar allows us to assume that counsel has the training, knowledge, and ability to represent a client who has chosen him. Continued licensure normally gives a reliable signal to the public that the licensee is what he purports to be—an attorney qualified to advise and represent a client. But it is an undeniable fact of experience that lawyers unhappily incur sanctions ranging from censure to disbarment; that sometimes that discipline flows from revealed incompetence or untrustworthiness or turpitude such as to deserve no client's confidence. All we need hold here is that a lawyer's services were ineffective on a case, not a per se, basis.

785 F.2d at 698; *see United States v. Mitchell*, 216 F.3d 1126, 1130 (D.C.Cir.2000).

## III. DISCUSSION

 In light of the foregoing considerations, we hold that Mr. C was not disqualified by virtue of his status as an "inactive" member of the bars of Iowa, Hawaii, and Texas. Contrary to appellant's assertions in his brief, there is no evidence that Mr. C was suspended from practicing in any of the states in which he held bar membership. Rather, Mr. C merely assumed an inactive status in each of those jurisdictions. This status does not reflect adversely upon his competence; nor does it reflect any change in the determination of his competence to practice law by any of these state bar associations. It follows that the mere fact that appellant's counsel did not maintain an active status in his licensing states is not a *per se* disqualifying factor.

■ We also note that Rule 8–6e, Comment, Department of the Navy JAGINST 5803.1A (Ch. 3, 30 May 1996), states that "an individual may be considered 'inactive' as to the practice of law within a particular jurisdiction and still be considered 'in good standing[.]'" Under this rule, therefore, inactive status does not bar military counsel from being certified as competent under Article 27(b)(2) to practice before Navy and Marine Corps courts-martial. We decline to adopt a more stringent rule for civilian counsel practicing before courts-martial. Unless an accused can demonstrate that civilian counsel had never attained any bar membership and could not be certified, we shall not deny or limit a military accused's right under Article 38 to elect civilian representation and pick his own civilian counsel. Once counsel is licensed to practice law by a state or competent licensing authority, we shall presume that civilian counsel are competent to appear as defense counsel at courts-martial.*

We agree with the federal cases cited above that once a state licensing authority has reviewed the qualifications and admitted an attorney to practice, a subsequent change in bar status alone does not necessarily result in a determination that there has been a denial of the Sixth Amendment right to counsel. We conclude that appellant's civilian counsel was not disqualified to practice before courts-martial by virtue of the fact that he was "inactive" in the three states within which he was licensed.

In any case, in at least one state, Texas, Mr. C's inactive status prohibited practice of law only within the state. Texas bar membership was adequate, therefore, to support counsel's appearance before a court-martial regardless of any limitations imposed by Hawaii or Iowa.

■ Because appellant has presented no issue of competence arising from civilian counsel's bar status and because appellant has not shown that civilian counsel's perfor-

mance was otherwise deficient, appellant has failed to meet his heavy burden of showing that he was denied the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Brownfield*, 52 MJ 40, 42 (1999); *United States v. Scott*, 24 MJ 186, 188 (CMA 1987).

## IV. CONCLUSION

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

COX, Senior Judge (concurring):

I agree with the resolution of the granted and specified issues. However, I am disquieted by the idea that it is acceptable to allow counsel, military or civilian, to practice before courts-martial when they could not represent civilians in civilian courts. Intuitively, it is my belief that military defendants, as well as their family and friends, operate under the assumption that "JAGS" are lawyers who are duly authorized to practice law in one or more of the sovereign States of this country.

Furthermore, notwithstanding the cases relied upon in the majority opinion which have let convictions stand even though the lawyer was disqualified from active practice, I know of no federal or state judge who would willingly let a disbarred, suspended, or inactive lawyer practice in his or her court. We should accept no less for our military accused.

If I were writing the rules, I would require that counsel (military or civilian) be in an "officially" recognized status which makes clear that they may be appointed to represent parties in a criminal trial or that they may, for a fee from a client, go into a courtroom and represent that client. That status carries with it the simple recognition that the

---

\* The record before us does not indicate whether there is a generally recognized practice in the trial of criminal cases before federal district courts that limits representation by counsel who are not in an active status in a state or federal bar. To the extent that there is a generally recognized practice providing for such limitations, it may be appropriate for the President to consider whether similar limitations should apply under the rules governing trials by courts-martial. *See* Art. 36, UCMJ, 10 USC § 836.

attorney is "legally competent" to represent clients. I would accept nothing less in order to meet the requirements of Article 27, Uniform Code of Military Justice, 10 USC § 827. To permit less seems to me to demean the noble profession of the law and to perpetrate a fraud upon the servicemembers, their families, and the public at large.